UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:13-CR-5-TAV-CCS-3 |
| ) | |
| ARTHUR CHARLES SMITH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This criminal matter is before the Court to expand on its oral rulings at the defendant's resentencing hearing on Tuesday, November 15, 2016. During that hearing, the Court overruled the defendant's objection to the Presentence Investigation Report [Doc. 100] and held that the defendant is a career offender as defined in U.S.S.G. § 4B1.1. The Court issues this opinion to provide further basis for that determination.

**I.     Background**

On April 23, 2013, the defendant appeared before the Honorable Amul R. Thapar, United States District Judge, and pleaded guilty, without a plea agreement, to robbing a pharmacy, in violation of 18 U.S.C. §§ 2118(a) and 2 (count one); using, carrying, and brandishing a firearm during and in relation to that robbery, in violation of 18 U.S.C. §§ 924(c)(1) and 2 (count two); and possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (count three) [Doc. 79 pp. 27].

The Presentence Investigation Report ("PSR") classified the defendant as a career offender, concluding that he had two qualifying convictions under U.S.S.G. § 4B1.1(a)

[Doc. 74 p. 1]. Under § 4B1.1(a), a defendant may qualify as a career offender if he has previously sustained two felony convictions "of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). One of the two qualifying convictions was for felony common law robbery under North Carolina law, which the PSR concluded was a crime of violence [*Id.*]. The defendant objected to this classification, arguing that his North Carolina robbery conviction is not a crime of violence [*Id.*]. Judge Thapar overruled this objection finding that the North Carolina common law robbery conviction qualifies as a crime of violence under the residual clause of the career offender guideline [*Id.* at 4–5]. As such, Judge Thapar determined that the defendant was properly classified as a career offender and sentenced him to 262 months' imprisonment [Doc. 74 p. 5; Doc. 75].

The defendant appealed his career-offender classification, and the Court of Appeals for the Sixth Circuit affirmed the defendant's sentence. *United States v. Smith*, 582 F. App'x 590, 598 (6th Cir. 2014). The Sixth Circuit concluded that North Carolina common law robbery qualifies as a crime of violence under § 4B1.2(a)'s residual clause and declined to address whether the offense otherwise qualifies as a crime of violence under § 4B1.2(a)'s enumerated-offense or use-of-force clauses. *Id.*

Nine months later, the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA"), 18 U.S.C. § 924(e),] violates the Constitution's guarantee of due process." *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). The Supreme Court subsequently granted certiorari in this

2

case, vacated the Sixth Circuit's judgment, and remanded the case for further consideration in light of *Johnson*. *Smith v. United States*, 135 S. Ct. 2930 (2015).

On May 13, 2016, the Sixth Circuit determined that the "rationale of *Johnson* applies equally to the residual clause" of the career offender guideline. *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016). As such, the court held that the residual clause in the guidelines is also invalid as "unconstitutionally vague." *Id.*

As a result, in this matter, the Sixth Circuit determined that the defendant "must be resentenced because the district court based his § 4B1.1 enhancement upon § 4B1.2(a)(2)'s unconstitutional residual clause" [Doc. 89 p. 3]. The Sixth Circuit vacated the judgment and remanded this case "for further consideration in light of *Mitchell* and *Pawlak*" [*Id.* at 3–4].

The United States Probation Office prepared a revised PSR in this matter, again classifying the defendant as a career offender under § 4B1.1 [Doc. 98 ¶ 39]. The defendant objected to this classification [Doc. 100], and the government responded in opposition to the objection [Doc. 104].

## II. Resentencing Procedure

As an initial matter, the Court addresses the resentencing procedure. Pursuant to 18 U.S.C. § 3742(g), when a case is remanded for sentencing, a district court shall resentence a defendant in accordance with § 3553 and with such instructions as may have been given by the court of appeals, except that the court must apply the version of the guidelines "that were in effect on the date of the previous sentencing of the defendant

3

prior to the appeal, together with any amendments thereto by any act of Congress that was in effect on such date." 18 U.S.C. § 3742(g)(1). Pursuant to the mandate rule, "a district court is bound to the scope of the remand issued by the court of appeals," which may be limited or general pursuant to 28 U.S.C. § 2106.[2] *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999); *accord United States v. Moore*, 131 F.3d 595, 597 (6th Cir. 1997). On a general remand, the district court may resentence a defendant *de novo*. *Moore*, 131 F.3d at 597. On a limited remand, however, a district court's authority is constrained "to the issue or issues remanded." *Id.* at 598.

To constitute a limited remand, the appellate court "must convey clearly [its] intent to limit the scope of the district court's review." *Campbell*, 168 F.3d at 267. A limited remand must "explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *Id.* at 265. The limiting language defining the scope of an appellate court's mandate may be found "anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language[,]" and "should be, in effect, unmistakable." *Id.* at 267–68; *see also United States v. O'Dell*, 320 F.3d 674, 678 (6th Cir. 2003) (finding a limited remand

---

[2] That section provides:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106.

4

where the appellate court stated, "we VACATE the judgment of the sentence entered by [the] district court and REMAND for re-sentencing without application of the safety valve"); *United States v. Santonelli*, 128 F.3d 1233, 1237 (6th Cir. 1997) (finding a limited remand when the Sixth Circuit stated "[b]ecause the sentence may have been affected by this incorrect information, we vacate [the defendant's] sentence and remand the case to the district court for resentencing"); *Moore*, 131 F.3d at 598–600 (comparing limited remands where the court of appeals sets forth limiting language for resentencing and general remands where the court of appeals simply remands for resentencing). Absent limitation, a "remand order is presumptively a general one." *Moore*, 131 F.3d at 598.

Neither party addressed this issue in their briefings, but the government argued at the resentencing hearing that this case is before the Court on a general remand because the Sixth Circuit remanded the case for "resentencing." In circumstances where the Sixth Circuit remands a case for "resentencing," that instruction does not necessarily prescribe *de novo* review. *See, e.g., United States v. Miles*, F. App'x 148, 150 (6th Cir. 2007) (finding that remands "for re-sentencings in light of *Booker*" are limited remands); *O'Dell*, 320 F.3d at 678 (finding a limited remand the Sixth Circuit remanded the case "for re-sentencing without application of the safety valve"); *Santonelli*, 128 F.3d at 1237 (finding a limited remand where the Sixth Circuit remanded the case for resentencing "[b]ecause the sentence may have been affected by [] incorrect information").

5

Here, Sixth Circuit's opinion provides: "Smith must be resentenced because the district court based his § 4B1.1 enhancement upon § 4B1.2(a)(2)'s unconstitutional residual clause. For this reason, we VACATE the judgment of the district court and REMAND this case to the district court for further consideration in light of *Mitchell* and *Pawlak*" [Doc. 89 pp. 3–4]. Furthermore, the Sixth Circuit opinion addressed only the career offender issue [*See generally* Doc. 89].

In addition, the Court notes that in situations where an appeals court has addressed the same case several times, as is here, "issuing limited remands on sentencing cases, leaving open for resolution only the issue found to be in error on the initial sentencing," is an avenue that avoids "wast[ing] judicial resources." *Santonelli*, 128 F.3d at 1238. As the Sixth Circuit has already seen this case on two occasions, a limited remand here would prevent "giving the parties additional bites of the litigation apple." *Id.* at 1239.

As the Sixth Circuit included limiting language in its opinion, and because a limited remand here prevents the unnecessary determination of issues already decided, the Court finds that the Sixth Circuit intended a limited remand.[1] As such, the Court's authority is constrained to the determination of whether the defendant is a career offender.

---

[1] As the Court indicated at the hearing, out of an abundance of caution, the Court heard and discussed matters outside the scope of the career offender issue during the resentencing. The Court finds that even if the Sixth Circuit intended a general remand, its determination on all issues would have remained the same.

## II. Categorization as a Career Offender

To qualify as a career offender under U.S.S.G. § 4B1.1, the defendant (1) must have been at least eighteen years old at the time he committed the instant offense of conviction, (2) the instant offense must be a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. Here, the only issue is whether the defendant satisfies the third element. While the parties do not dispute that the defendant has at least one predicate offense, the defendant argues that his 2009 North Carolina robbery conviction does not qualify as a crime of violence.

The sentencing guidelines define "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (2) "is burglary of a dwelling, arson, or extortion, [or] involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). U.S.S.G. § 4B1.2(a). At the defendant's sentencing in 2013, Judge Thapar ruled that the defendant's North Carolina robbery conviction qualified as a crime of violence under the residual clause [Doc. 74 pp. 4–5]. The Sixth Circuit subsequently ruled that the residual clause of the guidelines is unconstitutionally vague. *Pawlak*, 822 F.3d at 911. The Court must, therefore, determine if the defendant's

7

North Carolina robbery conviction otherwise constitutes a crime of violence under one of the unaffected provisions of § 4B1.2.

To determine whether a particular offense qualifies as a violent felony under the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," which looks "only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying [each] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime— courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281. Here, both the government and the defendant ask that the Court apply the traditional categorical approach in making its determination, which the Court does.[2]

The government argues that the North Carolina common law robbery conviction is a crime of violence because it qualifies under the use-of-force clause and it is an enumerated offense by way of Application Note 1 to U.S.S.G. § 4B1.2. The defendant

---

[2] The Court notes that the defendant entered an Alford Plea for his North Carolina common law robbery conviction. The defendant argued at the resentencing that the robbery conviction could not qualify as a predicate offense under the modified categorical approach due to the Alford Plea. As the Court is applying the traditional categorical approach, the fact that the defendant entered into an Alford Plea does not affect the Court's disposition because the particular facts of the conviction are not relevant. *United States v. McMurray*, 653 F.3d 367, 382 (6th Cir. 2011) (providing that convictions based on Alford pleas can be predicate offenses "if the qualifying crime is inherent in the fact of the prior conviction—i.e., if the statute of conviction is categorically a 'violent felony'").

8

disputes both arguments. The defendant also argues that *Almendarez-Torres* is no longer good law and that the defendant's prior conviction may not increase his sentence as it was not alleged in the indictment and proven to a jury beyond a reasonable doubt. The Court will address each of these arguments in turn.

    A.    **Use-of-Force Clause**

To qualify as a crime of violence under the use-of-force clause, an offense must have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The force involved must be "*violent* force— that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). It is sufficient that the force be capable of causing any injury, "regardless of [the injury's] gravity or duration." *United States v. Evans*, 699 F.3d 858, 863 (6th Cir. 2012).

In determining whether the defendant's North Carolina common law robbery conviction falls under the use-of-force clause, the Court must first decipher the elements of the offense. *Descamps*, 133 S. Ct. at 2283. To do so, the Court is constrained by the North Carolina Supreme Court's interpretation of state law. *Johnson*, 559 U.S. at 138; *see also United States v. Garner*, 823 F.3d 793, 803 (4th Cir. 2016) (determining that after the North Carolina Supreme Court, the decisions of North Carolina's intermediate appellate court "constitute the next best indicia of what state law is"). The Court must look to the "minimum conduct criminalized" to determine whether a North Carolina

common law robbery conviction categorically constitutes a crime of violence under the use-of-force clause. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

North Carolina common law robbery is defined as "the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence or putting him in fear." *State v. Lawrence*, 136 S.E.2d 595, 596–97 (N.C. 1964). "[T]he element of force in the offense of robbery may be actual or constructive." *State v. Sawyer*, 29 S.E.2d 34, 37 (N.C. 1944). Where actual force is used, "the degree of force is immaterial, so long as it is sufficient to compel the victim to part with his property." *Id.*; *see also State v. Robertson*, 531 S.E.2d 490, 493 (N.C. Ct. App. 2000) (finding that mere purse snatching is not sufficient force). Constructive force is sufficient if "the person robbed is put in fear sufficient to suspend the exercise of his free will or prevent resistance to the taking." *Id.* If a perpetrator "create[s] an apprehension of danger and induce[s] a man to part with his property for the sake of his person, the victim is put in fear." *Id.* In determining whether North Carolina common law robbery is "a felony which by definition involves the use or threat of violence," the North Carolina Supreme Court has twice held that "the use, or threatened use, of violence is an element of common law robbery." *State v. Jones*, 451 S.E.2d 826, 853–54 (N.C. 1994); *accord State v. Bell*, 603 S.E.2d 93, 117 (N.C. 2004).

The defendant argues that common law robbery cannot qualify as a crime of violence because it can be committed with *de minimis* force [Doc. 100 p. 4]. To support his contention, the defendant primarily relies on decisions of the North Carolina Court of

10

Appeals and the Fourth Circuit. The Court notes that it is constrained by the North Carolina Supreme Court's interpretation of state law, not the North Carolina Court of Appeals' interpretation nor the Fourth Circuit's. *See Johnson*, 559 U.S. at 138. As articulated by the North Carolina Supreme Court, common law robbery requires force sufficient to "compel the victim to part with his property," *Sawyer*, 29 S.E.2d at 37, and to "overpower the party robbed or prevent his resisting," *State v. John*, 50 N.C. (5 Jones) 163, 169 (1857). Such a requirement necessitates more than *de minimis* force.

Although the Court determines that the North Carolina Supreme Court's interpretation requiring more than *de minimus* force controls, the Court has reviewed the North Carolina Court of Appeals and Fourth Circuit decisions the defendant cited and finds them unconvincing.

The defendant cites *State v. Henry*, 290 S.E.2d 775 (N.C. Ct. App. 1982), to support the contention that a fear of unwanted touching is sufficient to satisfy the fear element of North Carolina common law robbery. In *Henry*, while the victim did state, "I was afraid he was going to touch me," she also testified that she was "afraid the defendant would hurt her." *Id.* at 776. As such, this case does not stand for the proposition that unwanted touching is sufficient fear to sustain a conviction for common law robbery. Instead, as the victim was afraid that the defendant would hurt her, this case supports finding that the defendant threatened "force capable of causing physical pain or injury to another person," and, consequently, that North Carolina common law robbery is a predicate offense under the use-of-force clause. *See Johnson*, 559 U.S. at 140.

11

The defendant also cites to *State v. Hammonds*, 222 S.E. 2d 4 (N.C. Ct. App. 1976). In *Hammonds*, the victim testified that the defendant scared her when he entered her store and ordered her to open the register. *Id.* at 5. She stated that he was "standing in [her] face staring at [her] as [if] she had done something wrong." *Id.* The tone and manner in which the defendant spoke to the victim was sufficient to "create an apprehension of danger to induce [the victim] to part with [the] property for the sake of [her] *person*." *Id.* (emphasis added). The North Carolina Court of Appeals determined that the victim was "not required to wait for [the] defendant to commit a battery upon her" and she "parted with the money because of fear for her safety." *Id.* The implied nature of the threat in this case does not make the threat nonviolent.

The defendant also points the Court to the Fourth Circuit decisions in *United States v. Garner*, 823 F.3d 793 (4th Cir. 2016) and *United States v. Carmichael*, 408 F. App'x 769 (4th Cir. 2011), where the court found that North Carolina common law robbery does not qualify under the ACCA's use-of-force clause. First, the Court notes that it is not bound by the Fourth Circuit's decisions. Rather, the Court must look to how the North Carolina Supreme Court interprets North Carolina law to determine whether the robbery conviction constitutes a predicate offense. *Johnson*, 559 U.S. at 138. The Court also notes that *Garner* and *Carmichael* conflict with at least two prior decisions from the Fourth Circuit which held that North Carolina common law robbery categorically qualifies as a violent felony under the ACCA. *United States v. Bowden*,

12

975 F.2d 1080, 1082 (4th Cir. 1992); *United States v. Hutchinson*, 149 F. App'x 214, 216 (4th Cir. 2005).

Looking at *Carmichael* further, the court provided no explanation or reasoning for its one-sentence conclusion that common law robbery does not fall under the use-of-force clause. *See* 408 F. App'x at 770. As such, *Carmichael* is entitled to little weight as it provides no persuasive reasoning upon which this Court can rely.

The court in *Garner* does provide reasoning for its conclusion, though, as the government contends herein, its reasoning is flawed. There, the court concluded that the force element in North Carolina common law robbery is insufficient to satisfy the use-of-force clause under the ACCA primarily relying on two unpublished decisions from the North Carolina Court of Appeals. *Garner*, 823 F.3d at 803–04. The court read these decisions as holding that common law robbery can be committed by "even minimal contact." *Id.* In the first case, the North Carolina Court of Appeals upheld a conviction where the defendant pushed the victim's shoulder causing her to fall into some shelves. *State v. Eldridge*, No. COA08-1219, 2009 WL 1525333, at *2 (N.C. Ct. App. June 2, 2009). In the second, the defendant pushed the victim's hand off a box of cigarettes with such force that caused the victim to let go of the box. *State v. Chance*, No. COA07-1491, 2008 WL 2415981, at * 4 (N.C. Ct. App. June 17, 2008). This Court does not find that such use of force constitutes minimal contact. Rather, the Court finds that this type of force is "capable of causing pain or injury" and, consequently, qualifies as violent force for the purposes of § 4B1.2(a)(1). *Johnson*, 559 U.S. at 133; *see also United States v.*

13

*Duncan*, 833 F.3d 751, 756 (7th Cir. 2016) ("the case law rejects" the position that "putting someone in fear of something as minor as a bruise or simple physical pain cannot qualify as a violent felony"); *see also Evans*, 699 F.3d at 863 (finding that it is sufficient that the force be capable of causing any injury "regardless of its gravity or duration").

Also, the Court finds that the Fourth Circuit in *Garner* incorrectly placed more weight on the North Carolina Court of Appeals decisions than the decisions of the North Carolina Supreme Court. The Fourth Circuit does not acknowledge the North Carolina Supreme Court's determination that "the use, or threatened use, of violence is an element of common law robbery," *Jones*, 451 S.E.2d at 853–54, and that the force used must "overpower the party robbed or prevent his resisting," *John*, 50 N.C. (5 Jones) at 169. Instead, the Fourth Circuit relied on the holdings in unpublished North Carolina Court of Appeals cases.

Furthermore, although not dispositive, the Court notes that the Fourth Circuit's decision in *Garner* is an outlier among federal courts of appeals' decisions considering whether similar state robbery offenses involve the use of force. All federal courts of appeals which have considered robbery offenses that, like North Carolina robbery, require more force than mere purse snatching have concluded that such offenses qualify as either crimes of violence or violent felonies under the use-of-force clause. *See Duncan*, 833 F.3d 754–57 (Indiana robbery); *United States v. Jenkins*, 651 F. App'x 920, 927 (11th Cir. 2016) (Florida robbery); *United States v. Maxwell*, 823 F.3d 1057, 1061

(7th Cir. 2016) (Minnesota robbery); *United States v. Lamb*, 638 F. App'x 575, 577 (8th Cir. 2016) (Michigan unarmed robbery); *United States v. Elliott*, 757 F.3d 492, 496 (6th Cir. 2014) (Kentucky first-degree robbery); *United States v. Wiggan*, 530 F. App'x 51, 57 (2d Cir. 2013) (Connecticut first-degree robbery); *United States v. Nigg*, 667 F.3d 929, 937 (7th Cir. 2012) (Arizona robbery); *United States v. Forrest*, 611 F.3d 908, 911 (8th Cir. 2010) (Colorado robbery); *United States v. Brown*, 437 F.3d 450, 452 (5th Cir. 2006) (Louisiana simple robbery); *United States v. Thomas*, 280 F.3d 1149, 1159 (7th Cir. 2002) (Georgia robbery); *United States v. Tirrell*, 120 F.3d 670, 680 (7th Cir. 1997) (Michigan attempted unarmed robbery); *United States v. Cornish*, 103 F.3d 302, 309 (3d Cir. 1997) (Pennsylvania third-degree robbery); *United States v. Dickerson*, 901 F.2d 579, 584 (7th Cir. 1990) (Illinois robbery).

In sum, the Court finds that North Carolina common law robbery categorically qualifies as a crime of violence under the use-of-force clause. Although the determination that the defendant's North Carolina common law robbery offense falls under the use-of-force clause is sufficient to classify him as a career offender, the Court will also address whether the robbery conviction qualifies an enumerated offense.

### B. Enumerated Crimes of Violence in Application Note 1

Application Note 1 to § 4B1.2 provides that "robbery" is a crime of violence. U.S.S.G. § 4B1.2, cmt. n.1. The Sixth Circuit has consistently held that the offenses listed in Application Note 1 are categorically crimes of violence. *E.g., United States v. Cooper*, 739 F.3d 873, 878 (6th Cir. 2014). To determine whether a particular state

15

offense qualifies as robbery as included in Application Note 1, the Court must consider whether that offense "fall[s] within the generic definition of the crime, which is found by surveying how the crime is described across jurisdiction, as well as consulting the Model Penal Code." *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012). In analyzing whether North Carolina common law robbery falls within the generic definition of the crime, courts have held that it does and, thus, held that the robbery is categorically a crime of violence. *See United States v. Moore*, 223 F. App'x 422, 424 (5th Cir. 2007); *United States v. Woods*, 169 F. App'x 790, 791 (4th Cir. 2006).

The defendant does not appear to dispute that North Carolina common law robbery qualifies as generic robbery [Doc. 100 pp. 8–9]. Instead, the defendant asserts that the application note is not authoritative because it expands the scope of the guidelines [*Id.* at 8]. He argues that the commentary including robbery as a crime of violence was only consistent with the language of the guidelines when the residual clause was intact. Consequently, the defendant asserts that, post-*Johnson*, Application Note 1 is no longer consistent with the guidelines.

The Supreme Court has determined that the commentary may only be authoritative if it is consistent with the actual language of the guidelines. *Stinson v. United States*, 508 U.S. 36, 38 (1993). The Sixth Circuit, however, has provided that because *Johnson* left intact the career offender application notes, "[t]here is no escaping [the] language [of the application notes] or its binding application." *United States v. Stevens*, 561 F. App'x 445, 448 (6th Cir. 2016) (determining that a Tennessee attempted aggravated burglary is

16

a crime of violence because it is enumerated in Application Note 1); *see also United States v. Morris*, 641 F. App'x 457, 461 (6th Cir. 2016) (finding that an Ohio aggravated assault conviction still qualified as a crime of violence post-*Johnson* because it qualified as "one of the enumerated crimes of violence listed in Application Note 1 to the career offender guideline"); *In re Kenneth Smith*, No. 16-5888 (6th Cir. Oct. 27, 2016) (finding that a prior Tennessee aggravated assault conviction still qualifies as a crime of violence following *Johnson* and *Pawlak* because it qualified as "generic aggravated assault"—an enumerated crime of violence in Application Note 1) [Doc. 104-1]. The Court is bound by this rule of law until and unless the Sixth Circuit provides otherwise.

The government also points out that the reasoning behind the Supreme Court's invalidation of the residual clause in *Johnson* does not apply here. The Supreme Court concluded in *Johnson* that "the wide-ranging inquiry required by the residual clause" was so "indetermina[te]" that it "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges." 135 S. Ct. at 2257. In contrast, Application Note 1 to § 4B1.2 specifically lists out offenses that qualify as crimes of violence. U.S.S.G. § 4B1.2, cmt. n.1 (providing that a conviction is a crime of violence if it is "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extensions of credit, and burglary of a dwelling"). Application Note 1, therefore, provides an "ascertainable standard" for its application, it is not unconstitutionally vague. *United States v. Shultz*, 733 F.3d 616, 622 (6th Cir. 2013)

17

(citing *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921)). The concerns the Supreme Court raised in *Johnson*, therefore, are not present here.

Furthermore, because the Court has already determined that the defendant's North Carolina common law robbery conviction falls under the use-of-force clause, the Court finds that the official commentary is not expanding the scope of the guideline.

In sum, as the defendant's North Carolina common law robbery offense falls within the generic definition of the crime, a point the defendant not does not dispute, the conviction qualifies as an enumerated offense pursuant to the application notes.

### C. *Almendarez-Torres*

The defendant's final argument is that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) is no longer good law in light of the Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Shepard v. United States*, 544 U.S. 13 (2005). As the Sixth Circuit already explained on appeal, the defendant's claim that *Almendarez-Torres* is no longer good law is without merit. *Smith*, 582 F. App'x at 600. Indeed, the Sixth Circuit has repeatedly found that "*Almendarez–Torres* is still good law and will remain so until the Supreme Court explicitly overrules it." *United States v. Nagy*, 760 F.3d 485, 488 (6th Cir. 2014). This Court cannot overrule binding Supreme Court precedent that the Sixth Circuit has adopted. The Court, therefore, declines to address the constitutionality of *Almendarez-Torres*.

18

### III. Conclusion

For the reasons discussed herein, the Court finds that the defendant's North Carolina common law robbery conviction constitutes a predicate offense under the career offender guideline. As such, the defendant's objection [Doc. 100] is **OVERRULED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE